**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| XINJIANG ZOU, | |
| Plaintiff, | Case No. |
| v. | JURY TRIAL DEMANDED |
| THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, and UNINCORPORATED ASSOCIATES IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

**VERIFIED COMPLAINT**

Plaintiff Xinjiang Zou ("Plaintiff") hereby brings the present action against all Individuals, Corporations, Limited Liability Companies, Partnerships, and Unincorporated Associates Identified on Schedule A (collectively, "Defendants"), attached hereto, as follows:

**JURISDICTION AND VENUE**

1.      This Court has subject-matter jurisdiction over Plaintiff's federal patent infringement claim under the Patent Act, 35 U.S.C. §§ 1 *et seq.*, pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over Plaintiff's related state-law equitable claims for unjust enrichment and constructive trust pursuant to 28 U.S.C. § 1367(a), as those claims form part of the same case or controversy and arise from the same nucleus of operative fact as Plaintiff's patent infringement claim. This Court further has authority to grant the equitable relief requested herein, including restitution, disgorgement, asset restraint, and the imposition of a constructive trust, pursuant to its inherent equitable powers and 35 U.S.C. § 283.

2.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1)–(3) and 1400(b) because Defendants have committed acts of patent infringement in this District and have purposefully directed infringing commercial activity toward this District by advertising, offering for sale, and selling the accused products to residents of Illinois through fully interactive e-commerce storefronts. On information and belief, each Defendant has completed at least one sale of the accused product into this District, including a test purchase made by Plaintiff in Illinois. Defendants' infringing conduct has therefore occurred within this District, and a substantial part of the events giving rise to Plaintiff's claims has occurred here. Venue is further proper because Defendants are foreign defendants and/or are not residents of any single U.S. judicial district, making venue proper in any district pursuant to 28 U.S.C. § 1391(c)(3).

## INTRODUCTION

3.     This is an action by Plaintiff to prevent e-commerce store operators who infringe upon Plaintiff's patented invention from further selling and/or offering for sale Unauthorized Products (defined as products not authorized by Plaintiff that embody Plaintiff's patented invention). Defendants create e-commerce stores under one or more seller aliases ("Seller Aliases") and then advertise, offer for sale, and/or sell Unauthorized Products to unsuspecting consumers. E-commerce stores operating under the Seller Aliases share unique identifiers—such as the same product images, design features, and other advertising elements of the Unauthorized Products offered for sale—establishing that a logical relationship exists between them and that Defendants' infringing conduct arises out of the same transaction, occurrence, or series of transactions or occurrences. In particular, each Defendant is offering for sale a materially identical lamp holder product that infringes the same patent. The Defendants' concurrent sale of this same accused product constitutes participation in the same series of transactions or occurrences and

2

involves common questions of fact. Joinder of the Defendants in one action is therefore proper under Fed. R. Civ. P. 20(a)(2). Defendants take advantage of circumstances including the anonymity and global reach afforded by the internet and the obscurity provided by international borders to violate Plaintiff's intellectual property rights with impunity. Defendants attempt to avoid liability by operating under multiple Seller Aliases to conceal their identities, locations, and the full scope of their infringing operation. Plaintiff is forced to file this action to combat Defendants' deliberate infringement of its patented invention and to protect consumers from purchasing these Unauthorized Products over the Internet. Plaintiff has been, and continues to be, irreparably damaged through loss of market share and erosion of Plaintiff's patent rights due to Defendants' actions. Plaintiff therefore seeks injunctive relief and monetary relief, including damages and disgorgement of Defendants' ill-gotten gains.

## THE PARTIES

4.      Plaintiff Xinjiang Zou ("Plaintiff") is a Chinese individual residing in Shenzhen, China, and is the owner of the patents asserted in this action.

5.      Plaintiff is the owner of all right, title, and interest in U.S. Patent No. 11,859,797 B2 (the "'797 Patent" or "Plaintiff's Patent"). A true and correct copy of the '797 Patent is attached hereto as Exhibit 1.

## PLAINTIFF'S ASSERTED PATENT NO. 11,859,797

6.      The '797 Patent is titled "Lamp holder structure." It was duly and legally issued on January 2, 2024 from U.S. Patent Application No. 17/096,867, filed on November 12, 2020.

7.      The '797 Patent generally describes a novel lamp holder device that allows for quick and reliable electrical connection of wires without the need for separate wire stripping or screw terminals. In particular, the '797 Patent discloses a lamp holder comprising a shell main

body and a top cover that are both made of hard plastic, with the top cover attachable to the upper end of the shell main body. The shell main body defines a bulb installation hole opening downward to receive a light bulb. Above that bulb hole, the shell main body has an integrally formed installation part featuring an upward-open wire placing groove that runs completely across the part. Within the bottom of this wire groove are two spaced installation grooves that communicate with the bulb installation hole. Conductive elastic sheets (metal contact strips) are embedded in each installation groove, and the lower ends of these sheets extend into the bulb installation hole. The upper ends of the metal sheets have sharp contact tips that protrude upward into the wire groove.

8.     The lamp holder's top cover has a corresponding wire pressing part protruding downward, aligned to fit into the wire placing groove when the cover is closed. When wires are laid in the wire placing groove and the top cover is fastened, the top cover's pressing part forces the wires down onto the sharp contact tips of the conductive sheets. The contact tips pierce the insulation of the wires and engage the metal core of each wire, thereby establishing an electrical connection between the wire and the conductive sheet. The conductive sheets also extend into the bulb hole to form electrical contacts for a bulb inserted therein. Thus, when assembled, the lamp holder provides a secure electrical connection to both wires and the bulb without requiring any manual stripping of wire insulation or use of screws. This innovative structure solved problems in prior lamp holder designs that required labor-intensive wiring or unreliable connections. By integrating an insulation-piercing connector mechanism into the lamp holder, the '797 Patent provides a faster, more reliable, and easily manufacturable solution for connecting wires to a lamp socket.

9.      None of the Defendants is authorized by Plaintiff to practice the '797 Patent or to manufacture, use, sell, or offer for sale products covered by the '797 Patent. Plaintiff has not licensed or otherwise permitted Defendants to exploit the patented invention in any manner.

## DEFENDANTS' UNLAWFUL CONDUCT

10.     The success and value of Plaintiff's patented technology have resulted in significant infringement of the '797 Patent by unauthorized sellers. In response, Plaintiff has implemented an anti-infringement program that involves investigating suspicious e-commerce listings identified through proactive online sweeps. Recently, Plaintiff identified numerous fully interactive e-commerce storefronts offering for sale Unauthorized Products on online marketplace platforms like Amazon.com ("Amazon"), including the e-commerce stores operating under the Seller Aliases identified in Schedule A. True and correct copies of representative webpages showing the active Amazon storefronts operating under the Seller Aliases have been captured and are attached as Exhibit 2. True and correct copies of the invoices for each accused product purchased are attached as Exhibit 3.

11.     On information and belief, each of the Defendants, either individually or jointly, operates one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Defendants employ various tactics to conceal their identities and the full scope of their operations, making it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their infringing network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend this Complaint to include their true names.

12.     On information and belief, the Seller Aliases are deliberately directed at consumers in this Judicial District and throughout the United States. Defendants have targeted sales to Illinois

residents by setting up and operating e-commerce stores that target U.S. consumers using their Seller Aliases, by offering shipping to the United States (including Illinois), by accepting payment in U.S. dollars, and, on information and belief, by selling and/or offering to sell Unauthorized Products to residents of Illinois.

13.     Defendants employ and benefit from similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under their Seller Aliases so that they appear to unknowing consumers to be legitimate or authorized online retailers, outlet stores, or wholesalers. E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars through multiple methods (including major credit cards and established payment processors like Amazon Pay, PayPal, and others). These storefronts often include content and product images that make it very difficult for consumers to distinguish Defendants' stores from an authorized retailer. Plaintiff has not licensed or authorized Defendants' use of the '797 Patent, and none of the Defendants is an authorized distributor of any product covered by Plaintiff's Patent.

14.     E-commerce store operators like Defendants commonly engage in fraudulent conduct when registering their Seller Aliases, such as providing false, misleading, and/or incomplete contact information to the host platforms in order to prevent discovery of their true identities and the scope of their operations.

15.     E-commerce store operators like Defendants also frequently register or acquire new seller aliases for the purpose of continuing to offer for sale and sell Unauthorized Products. Such seller-alias registration patterns are among the many common tactics used by infringing e-commerce operators to conceal their identities, to obscure the full scope and interworking of their infringing operation, and to avoid being shut down.

16.     Even though Defendants may operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers. For example, they may use the same or similar webpage templates with common design elements that intentionally omit or falsify contact information, or they may use identical product images and descriptions. Stores operating under the Seller Aliases exhibit other common features, such as similar naming patterns, accepted payment methods, checkout methods, keywords, advertising tactics, pricing strategies, and even the same typographical errors and grammatical mistakes in their listings.

17.     Additionally, the Unauthorized Products offered for sale by the various Seller Aliases have the same distinctive design and characteristics, indicating that they are materially identical infringing products likely manufactured by and originating from a common source. These commonalities strongly suggest that Defendants' operations are interrelated and not merely coincidental.

18.     E-commerce store operators like Defendants are known to communicate with each other through online forums and chat groups (for example, QQ.com chat rooms) and to utilize websites such as sellerdefense.cn that provide advice and tactics for operating multiple marketplace accounts and evading detection by intellectual property owners. These websites even notify operators like Defendants of new IP enforcement actions (including lawsuits filed by rights owners such as Plaintiff) and advise them to take steps such as removing infringing listings, liquidating funds from accounts, and changing payment processors to avoid asset freezes.

19.     Infringers such as Defendants typically operate multiple marketplace accounts and associated financial accounts so that they can continue their business under new identities if one or more accounts are shut down. E-commerce operators like Defendants maintain offshore bank

accounts and regularly transfer funds from their U.S. marketplace accounts to offshore accounts outside the jurisdiction of this Court, all in an effort to shield their illicit profits and to evade payment of any monetary judgment awarded to a rights holder.

20.     On information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Unauthorized Products that infringe the '797 Patent as part of the same transaction, occurrence, or series of transactions or occurrences. Each Defendant's accused product is materially identical to the others, and Defendants' concurrent sale of this same infringing lamp holder product arises out of the same series of transactions and occurrences and involves common questions of fact. Accordingly, Defendants are properly joined in one action under Fed. R. Civ. P. 20(a)(2). Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully infringed Plaintiff's Patent through the use, manufacture, distribution, offering for sale, and sale of Unauthorized Products into the United States, including into the State of Illinois, via the Internet.

21.     Defendants' unauthorized use of the invention claimed in Plaintiff's Patent in the distribution, offering for sale, and sale of the Unauthorized Products—including sales of such products into the United States and into Illinois—has caused and is likely to continue to cause a loss of market share for Plaintiff's own patented technology and an erosion of Plaintiff's exclusive patent rights. Defendants' conduct is thus irreparably harming Plaintiff.

**COUNT I**
**PATENT INFRINGEMENT (35 U.S.C. § 271) – U.S. Patent No. 11,859,797**

22.     Plaintiff re-alleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

23.     As shown above, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell infringing products in the same

transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Plaintiff, have jointly and severally, knowingly and willfully offered for sale, sold, and/or imported into the United States for resale or use the same lamp holder product that infringes, directly and/or indirectly, Plaintiff's '797 Patent.

24.     As shown in the claim chart attached as Exhibit 3, the products being sold by Defendants include each and every limitation of at least Claim 1 of Plaintiff's '797 Patent. The claim chart in Exhibit 4 is illustrative only and is made without the benefit of full discovery or claim construction; Plaintiff reserves the right to modify its infringement theory as appropriate as the case proceeds.

25.     Specifically, Defendants have infringed and continue to infringe one or more claims of the '797 Patent by making, using, importing, selling, and/or offering to sell their infringing lamp holder products in the United States without authorization or license from Plaintiff. Each Defendant's product practices the patented invention, and Defendants' acts constitute direct infringement under 35 U.S.C. § 271(a). To the extent any Defendant is not the manufacturer of the infringing products, that Defendant's conduct also constitutes at least importation, sale, and/or offers to sell infringing products under 35 U.S.C. § 271.

26.     One distinctive structural feature common to all Defendants' Accused Products is the presence of an insulation-piercing connector mechanism in the lamp holder, exactly as claimed in the '797 Patent. In each Accused Product, a pair of conductive metal contact sheets with sharpened tips are embedded in the lamp holder's shell. When the lamp holder's top cover is pressed down during use, those contact tips pierce through the insulation of inserted wires and electrically engage the wire cores, establishing a circuit. This unique insulation-piercing design is

present in every one of the Accused Products, confirming that all Defendants are selling the same or materially identical infringing product.

27.     Defendants have each profited by their infringement of Plaintiff's Patent, and Plaintiff has suffered actual financial harm as a result of Defendants' infringing activities.

28.     As a direct and proximate result of Defendants' infringement, Plaintiff has suffered irreparable harm and monetary damages in an amount to be determined. Defendants' infringement of the '797 Patent through the acts described—including offers for sale, sales, and/or importation of infringing products into the State of Illinois—has caused and continues to cause Plaintiff irreparable injury. Defendants' wrongful conduct has deprived Plaintiff of its lawful right to exclusively make, use, sell, and offer for sale the patented invention, and has caused lost sales as well as lost revenue from sales made by Defendants instead of Plaintiff.

29.     Defendants' infringement has been and continues to be willful. Each Defendant had knowledge of Plaintiff's Patent (at least through Plaintiff's patent markings, online notice, or prior communications) or deliberately avoided learning of it, and each Defendant has nonetheless engaged in infringing activities in blatant disregard of Plaintiff's rights. Accordingly, Plaintiff is entitled to enhanced damages up to three times the amount of actual damages, pursuant to 35 U.S.C. § 284. Furthermore, this case qualifies as an "exceptional" case under 35 U.S.C. § 285, entitling Plaintiff to an award of its reasonable attorneys' fees and costs.

30.     Plaintiff is entitled to injunctive relief pursuant to 35 U.S.C. § 283. Unless Defendants are preliminarily and permanently enjoined by this Court from continuing their infringement of the '797 Patent, Plaintiff will continue to suffer additional irreparable harm, including loss of market share and further erosion of its exclusive patent rights.

31.     Plaintiff is entitled to recover damages adequate to compensate for Defendants' infringement, in no event less than a reasonable royalty for the use made of the invention, together with interest and costs, pursuant to 35 U.S.C. § 284.

**COUNT II**
**UNJUST ENRICHMENT (EQUITABLE CLAIM)**

32.     Plaintiff re-alleges and incorporates by reference the allegations set forth in all preceding paragraphs as though fully set forth herein.

33.     On information and belief, Defendants have engaged in independent, deceptive, and inequitable commercial conduct in connection with the marketing, sale, and concealment of the proceeds derived from their Unauthorized Products, including but not limited to:

   a.   operating under false or fictitious seller identities to conceal their true business information;

   b.   misrepresenting the authorization, source, or legitimacy of the products they sell;

   c.   violating online marketplace platform rules to avoid detection and enforcement actions;

   d.   routing sales proceeds through foreign or otherwise undisclosed financial accounts; and

   e.   rapidly transferring, concealing, and dissipating the proceeds from infringing sales in order to evade legal accountability.

34.     Through this independent wrongful conduct, Defendants have knowingly obtained and retained specific, traceable funds derived from their sales of the Unauthorized Products—funds which, in equity and good conscience, belong to Plaintiff.

35.     Defendants' retention of these specific sales proceeds is unjust, inequitable, and unconscionable, as the funds were generated through the above-described deceptive commercial

11

practices and through the wrongful exploitation of Plaintiff's proprietary patented technology in violation of law and marketplace rules.

36.    This claim for unjust enrichment does not seek to impose liability for patent infringement *per se*. Rather, Plaintiff seeks equitable restitution of the specific, identifiable, and traceable proceeds that Defendants have wrongfully obtained and retained through their independent deceptive marketplace conduct and fraudulent evasion of enforcement. These acts constitute extra elements beyond the act of patent infringement itself.

37.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff has suffered and continues to suffer concrete and irreparable harm. Plaintiff is entitled to equitable restitution, disgorgement of Defendants' ill-gotten gains, and other restitutionary relief in an amount to be proven at trial.

## COUNT III
## CONSTRUCTIVE TRUST / EQUITABLE DISGORGEMENT

38.    Plaintiff re-alleges and incorporates by reference the allegations contained in all preceding paragraphs as though fully set forth herein.

39.    Defendants have wrongfully obtained, possess, and control specific identifiable funds directly traceable to their sales of the Unauthorized Products. These funds include, but are not limited to, the proceeds currently held in Defendants' online marketplace seller accounts, payment processor accounts, and other affiliated financial accounts.

40.    Through their fraudulent concealment, deceptive marketplace practices, and unlawful retention of infringing proceeds, Defendants have obtained property that—in equity and good conscience—should not be retained by them.

41.    Defendants' continued possession and control of these traceable proceeds constitutes the wrongful detention of property that, in equity, belongs to Plaintiff.

42.     Under fundamental principles of equity and restitution, Defendants hold all such traceable infringing proceeds in trust for the benefit of Plaintiff. Defendants are acting as constructive trustees for Plaintiff's benefit with a duty to convey those funds to Plaintiff.

43.     Imposition of a constructive trust over the illicit proceeds in Defendants' possession is necessary because no remedy at law is adequate in these circumstances. Such relief is needed to (1) prevent the irreparable dissipation of identifiable funds, (2) prevent Defendants' evasion of any judgment, and (3) preserve the Court's ability to grant meaningful equitable relief.

44.     Absent immediate equitable relief restraining these assets, Defendants will likely continue to secret, transfer, or dissipate the funds beyond the reach of this Court, thereby undermining any final judgment and causing irreparable harm to Plaintiff.

45.     Accordingly, Plaintiff is entitled to: (a) the imposition of a constructive trust over all funds traceable to Defendants' infringing sales, and (b) an order restraining the transfer, withdrawal, or dissipation of such funds pending final adjudication of this matter.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Xinjiang Zou respectfully prays for judgment against Defendants as follows:

A.     That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, or under them be temporarily, preliminarily, and permanently enjoined and restrained from:

- making, using, offering for sale, selling, and/or importing into the United States for sale or use any products that infringe upon Plaintiff's '797 Patent; and

- aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon Plaintiff's '797 Patent.

B. That upon Plaintiff's request, any third parties with notice of the injunction – including without limitation any websites and online marketplace platforms such as Amazon.com – shall disable and cease displaying any listings or advertisements used by or associated with Defendants in connection with the sale of goods that infringe Plaintiff's Patent.

C. That Judgment be entered against Defendants finding that each Defendant has infringed Plaintiff's '797 Patent as alleged herein.

D. That Judgment be entered finding that Defendants' infringement of Plaintiff's Patent has been willful.

E. That Plaintiff be awarded damages adequate to compensate for Defendants' patent infringement, in an amount to be proved at trial, but in no event less than a reasonable royalty pursuant to 35 U.S.C. § 284, together with pre-judgment and post-judgment interest and costs, as allowed by law.

F. That Plaintiff be awarded enhanced (treble) damages under 35 U.S.C. § 284 due to Defendants' willful infringement, and that this case be declared exceptional under 35 U.S.C. § 285.

G. That the Court find this to be an exceptional case under 35 U.S.C. § 285, entitling Plaintiff to an award of its reasonable attorneys' fees.

H. That Defendants be ordered to disgorge and remit to Plaintiff all profits, revenues, and unjust enrichment obtained as a result of Defendants' unlawful sale of the Unauthorized Products, including, without limitation, all sums currently held in or transferred through Defendants' marketplace seller accounts, payment processor accounts, and other financial accounts.

I.      That a constructive trust be imposed over all funds, assets, and proceeds traceable to Defendants' sales of the Unauthorized Products, wherever those funds may be located, for the benefit of Plaintiff.

J.      That an order be entered temporarily, preliminarily, and permanently restraining and enjoining Defendants, and all persons acting in concert with them, from transferring, withdrawing, encumbering, concealing, or dissipating any money or assets traceable to the sale of the Unauthorized Products, including but not limited to all assets in Defendants' Amazon seller accounts, other online marketplace accounts, and associated financial accounts.

K.      That Defendants be ordered to provide a full and complete accounting of all revenues, profits, sales, and proceeds obtained in connection with the Unauthorized Products, including the identification of all financial accounts and the amounts deposited in those accounts.

L.      That Defendants, and all third-party e-commerce platforms, payment processors, and financial institutions who receive notice of the Court's Order, be ordered to immediately turn over to Plaintiff (or to the Court, for Plaintiff's benefit) all funds and assets subject to the constructive trust imposed over Defendants' infringing proceeds.

M.      That Defendants be permanently enjoined from any further concealment, transfer, or dissipation of the proceeds derived from their infringing sales, and from engaging in any future infringement of Plaintiff's Patent.

N.      That Plaintiff be awarded pre-judgment and post-judgment interest on all monetary relief, including damages and disgorged funds, at the maximum rate allowed by law.

O.      That Plaintiff be awarded its reasonable attorneys' fees, court costs, investigative fees, and litigation expenses to the extent permitted by law (including under 35 U.S.C. § 285),

particularly those incurred in investigating Defendants' infringing activities and in discovering and securing Defendants' assets.

P.     That Plaintiff be awarded any and all other relief that the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: February 7, 2026                                    Respectfully submitted,


                                                           /s/ Nicholas S. Lee
                                                           Nicholas S. Lee
                                                           1823 Turtle Bay Road
                                                           Vernon Hills, IL 60061
                                                           Nickles72@gmail.com
                                                           nslee@nslegal-ip.com
                                                           Tel: 773-732-8244

                                                           *Counsel for Plaintiff, Xinjiang Zou*

## VERIFICATION

I, Xinjiang Zou, hereby certify as follows:

1. I am the owner of the '797 Patent and am authorized to make this Verification.

2. I have read the foregoing Verified Complaint. The factual allegations contained therein are true and correct to the best of my knowledge, based on my personal knowledge.

3. I certify under penalty of perjury under the laws of the United States of America that the foregoing statements made by me are true and correct.

Executed on February 10, 2026.

Xinjiang Zou
Xinjiang Zou

17